KRAMER SERVICE, INC., *v.* WILKINS.

(Division A. Feb. 20, 1939.)

[186 So. 625. No. 33532.]

Price & McLain and R. B. Reeves, all of McComb, and Green, Green & Jackson and Watkins & Eager, all of Jackson, for appellant.

486

488

W. Calvin Wells, of Jackson, A. A. Cohn and J. W. Cassedy, both of Brookhaven, and Mounger & Watts and Gordon Roach, all of McComb, for appellee.

490

Argued orally by **W. G. McLain** and **W. H. Watkins**, for appellant, and by **W. Calvin Wells**, for appellee.

**Griffith, J.**, delivered the opinion of the Court.

Appellant was and is the owner and operator of a large hotel. About 5:30 o'clock P. M. on January 15, 1935, one Clockey registered as a guest and was given a room, to which he was conducted by a bellboy. Mr. Clockey was the district sales representative of an oil company, and appellee was the local representative. The business which brought Clockey to the hotel was to have a conference with appellee. It was the long established custom of the hotel that a guest should have the privilege of inviting to his room any person whom the guest wished to see on business. It was the purpose of Clockey to telephone appellee of his arrival, and expected that a telephone would be in his room.

Soon after entering the room, Clockey discovered that there was no telephone therein, and that the windows could not be raised nor the transom lowered so as to give ventilation. The reason that the guest could not undertake to lower the transom was that there was a break in the glass thereof, the break being described by this witness as cone-shaped and about twenty inches in length

at the base, the broken portion clinging nevertheless in the transom.

Clockey was obliged to go to the hotel office in order to telephone appellee, his business associate, which he did in about twenty minutes after he had registered. While on this mission Clockey informed the hotel clerk of the objectionable condition of the room, including a reference to the condition of the transom. The clerk explained that there was a convention in session at the hotel, and that the room assigned was the only one left, but that a better room could be given on the next day.

About two hours later appellee came to Clockey's room in response to the telephone message, and when the business conference was concluded appellee was in the act of leaving the room. When he opened the door, which was done in an ordinary manner, without any violence, the broken piece of the transom fell striking appellee upon the head. Three wounds were thus made upon appellee's head, one of which was a jagged abrasion on the temple.

The foregoing statement of the facts is supported by competent evidence which in the light of the verdict of the jury must be accepted as true. There is further competent evidence to the effect that the condition of unrepair which resulted in the fall of the broken transom glass had existed for a sufficient length of time to charge appellant with responsible notice thereof, and that the condition was such that a reasonably prudent and careful operator should have foreseen the fall of the broken glass and an injury thereby as a likelihood of appreciable weight and moment. See Gulf Refining Co. v. Williams, Miss., 185 So. 234. There is no reversible error in the record on the issue of liability, and as to that issue the judgment will be affirmed.

But there is plain and serious error in the matter of the amount of the damages. The wound on the temple did not heal, and some months after the injury appellee was advised by his local physician to visit a specialist

in skin diseases, which he did in January, 1937, about two years after the injury, and it was then found that at the point where the injury occurred to appellee's temple, a skin cancer had developed, of which a cure had not been fully effected at the time of the trial, some three years after the injury first mentioned.

Appellee sued for a large sum in damages, averring and contending that the cancer resulted from the stated injury; and the jury evidently accepted that contention, since there was an award by the verdict in the sum of twenty thousand dollars. Appellant requested an instruction to the effect that the cancer or any prolongation of the trouble on account thereof should not be taken into consideration by the jury, but this instruction was refused.

Two physicians or medical experts, and only two, were introduced as witnesses, and both were specialists in skin diseases and dermal traumatisms. One testified that it was possible that a trauma such as appellee suffered upon his temple, could or would cause a skin cancer at the point of injury, but that the chances that such a result would ensue from such a cause would be only one out of one hundred cases. The other testified that there is no causal connection whatever between trauma and cancer, and went on to illustrate that if there were such a connection nearly every person of mature age would be suffering with cancer. Further reference to the medical testimony will be made later herein.

It seems therefore hardly to be debatable but that appellant was entitled to the requested instruction as regards the cancer; and since, except as to that element, the verdict could not have been large, the verdict and judgment must be reversed on the issue of the amount of the damages.

There is one heresy in the judicial forum which appears to be Hydra-headed, and although cut off again and again, has the characteristic of an endless removal. That heresy is that proof that a past event possibly hap-

pened, or that a certain result was possibly caused by a past event, is sufficient in probative force to take the question to a jury. Such was never the law in this State, and we are in accord with almost all of the other common-law states. Nearly a half century ago, when our Court stood forth in point of ability never excelled, and when the principles of the jurisprudence of this State were being put into a more definite form than ever before, Chief Justice CAMPBELL said in Railroad v. Cathey, 70 Miss. 332, 337, 12 So. 253: "It is not enough that negligence of the employer and injury to the employe coexisted, but the injury must have been caused by the negligence. . . . 'Post hoc ergo propter hoc' is not sound as evidence or argument. Nor is it sufficient for a plaintiff seeking recovery for alleged negligence by an employer towards an employee to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation."

This terse and expressive language had no such limited application as that it governed only in employer and employe cases, but is to be paraphrased as follows: It is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence. Post hoc ergo propter hoc is not sound as evidence or argument. Nor is it sufficient for a plaintiff, seeking recovery for alleged negligence by another toward the plaintiff, to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation.

Over and over in language to the same effect since that day this rule has been repeated and reaffirmed; a page-to-page search in our Mississippi reports would probably disclose not less than one hundred cases in which, in one form or another, this has been held. Some of the recent cases cited in the briefs now before us are: Yazoo & M. V. Railroad Co. v. Boone, 111 Miss. 881, 72 So. 777;

Tyson v. Utterback, 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188; New Orleans & N. E. Railroad Co. v. Holsomback, 168 Miss. 493, 151 So. 720; Williams v. Lumpkin, 169 Miss. 146, 152 So. 842; Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277; Yazoo & M. V. Railroad Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50, 178 So. 80; Teche Lines v. Bounds (Miss.), 179 So. 747; Berryhill v. Nichols, 171 Miss. 769, 158 So. 470. In the latter case it was held that medical testimony that from an alleged cause a certain result is possible, but not probable, is no substantial testimony at all; and this was repeated in Teche Lines v. Bounds, supra, and it was again so held in Mutual Benefit Health & Accident Association v. Claudia May Johnson, No. 33,488, decided two weeks ago, and not yet reported.

Taking the medical testimony in this case in the strongest light in which it could be reasonably interpreted in behalf of the plaintiff, this testimony is that as a possibility a skin cancer could be caused by an injury such as here happened, but as a probability the physicians were in agreement that there was or is no such a probability.

And the medical testimony is conclusive on both judge and jury in this case. That testimony is undisputed that after long and anxious years of research the exact cause of cancer remains unknown—there is no dependably known origin to which it can be definitely traced or ascribed. If, then, the cause be unknown to all those who have devoted their lives to a study of the subject, it is wholly beyond the range of the common experience and observation of judges and jurors, and in such a case medical testimony when undisputed, as here, must be accepted and acted upon in the same manner as is other undisputed evidence; otherwise the jury would be allowed to resort to and act upon nothing else than the proposition post hoc ergo propter hoc, which, as already mentioned, this Court has long ago rejected as unsound, whether as evidence or as argument.

In all other than the exceptional cases now to be men-

tioned, the testimony of medical experts, or other experts, is advisory only; but we repeat that where the issue is one which lies wholly beyond the range of the experience or observation of laymen and of which they can have no appreciable knowledge, courts and juries must of necessity depend upon and accept the undisputed testimony of reputable specialists, else there would be no substantial foundation upon which to rest a conclusion. 22 C. J., pp. 730, 731; Moratzky v. Wirth, 74 Miss. 146, 148, 76 So. 1032; Ewing v. Goode, C. C., 78 F. 442. Thus in Berryhill v. Nichols, supra, which dealt with a case of pulmonary embolism, and of which a jury could have no knowledge whatever except as conveyed to them by medical experts, the action of the court in granting a peremptory instruction on the medical testimony was upheld as correct, and a like course was taken by this Court in Mutual, etc., Association v. Johnson, supra. See also, as somewhat in point, the cancer case, Schapiro v. Wanamaker, 197 App. Div. 810, 189 N. Y. S. 343.

Affirmed as to liability; reversed and remanded on the issue of the amount of the damages.